UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD FRANK SCHUH,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　　　Defendant. | Case No.: 18-cv-1398-GPC-AGS<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt Nos. 13, 18]** |

## **INTRODUCTION**

On June 25, 2018, Plaintiff Richard Schuh ("Plaintiff"), proceeding *in forma pauperis* and with counsel, filed this action pursuant to § 405(g) of the Social Security Act ("Act"), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") in a claim for disability

insurance benefits under Title II of the Act. 42 U.S.C. § 405(g).[1] Dkt. No. 1, Compl. On October 22, 2018, Defendant filed an answer and lodged the administrative record ("AR"). Dkt. Nos. 10, 11. On December 14, 2018, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial of disability benefits or, alternatively, requesting remand for further administrative proceedings. Dkt. No. 13. On April 9, 2019, Defendant filed a cross motion for summary judgment and an opposition to Plaintiff's motion for summary judgment. Dkt. Nos. 18 & 19. Plaintiff filed a response and a reply on May 8, 2019. Dkt. No. 22.

On July 29, 2019, Magistrate Judge Andrew G. Schopler issued a report and recommendation ("Report") recommending Plaintiff's motion for summary judgment be granted, that Defendant's cross-motion for summary judgment be denied, and that the case be remanded for further proceedings. Dkt. No. 26. Magistrate Judge Schopler found that the Administrative Law Judge discounted the opinion of claimant's treating doctor without considering various regulatory factors and that the error was not harmless. No objections were filed. After careful consideration of the pleadings and supporting documents, this Court **ADOPTS** in full the Magistrate Judge's report, **DENIES** Defendant's cross motion for summary judgment, and **GRANTS** Plaintiff's motion for summary judgment and directs that the case be remanded to the Social Security Administrator for further proceedings.

## PROCEDURAL BACKGROUND

On May 18, 2014, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, claiming disability beginning on July 2, 2012.

---

[1] Plaintiff's complaint invoked the Courts jurisdiction to "review a decision of the Commissioner of Social Security denying Plaintiff's Application for Social Security Disability benefits [Title II] and Supplemental Security Income benefits [Title XVI] for lack of disability." Compl. at 1. However, after a careful review of the record, this Court found the Plaintiff never requested Supplemental Security Income Benefits. Therefore, this Court focused its review solely on the Commissioner's decision to deny Plaintiff Social Security Disability benefits under Title II of the Act.

2

AR 18, 29, 31, 46. Plaintiff's claims were denied at the initial level and again upon reconsideration. *Id*. at 18. Plaintiff alleged disability based on low back pain. *Id.* at 21.

On March 27, 2017, Plaintiff appeared with counsel and testified before an Administrative Law Judge ("ALJ") MaryAnn Lunderman. *Id*. at 18. On April 21, 2017, the ALJ issued a written decision, finding the Plaintiff was not disabled as defined under Title II and Title VI of the Act. *Id*. at 18-25. On August 11, 2017, Plaintiff filed a request for appeal of the ALJ's decision with the Appeals Council. *Id.* at 209-10. The Appeals Council reviewed the record and affirmed the ALJ's decision, which became the final decision of the Commissioner on August 27, 2018. Compl. at 4.

In his motion for summary judgment, Plaintiff argues that the ALJ committed reversible error by: (1) finding that Plaintiff had the residual functional capacity to perform light work (Dkt. No. 13 at 3-5); [2] (2) failing to properly weigh the medical opinions of Plaintiff's treating physician (*id.* at 5-7); and (3) failing to consider Plaintiff's reduction in productivity (*id.* at 7-8).

## **FACTUAL BACKGROUND**

Plaintiff alleges disability as of July 2, 2012. AR 67, 151. In his application, he claims disability due to: (1) back pain; and (2) foot pain. *Id.* at 69, 70, 76. Plaintiff has a history of back pain arising from a work-related injury in 2008 with subsequent back surgery in 2010. AR 21, 220. After 2010, Plaintiff continued to report significant low back pain and in March 2014, physical examination revealed tenderness in the paraspinal muscles, but there was no weakness or positive straight leg raise testing. *Id.* In May 2014, Plaintiff presented to doctors with complaints of bilateral back pain extending into his feet and legs. AR 22, 231. Upon examination, Plaintiff had tenderness to palpation and an MRI showed evidence of neural encroachment. However, there was no nerve root compromise or stenosis and a normal range of motion in all directions. Plaintiff

---

[2] All citations to the record therein are based upon the pagination imprinted by the CM/ECF system.

subsequently underwent epidural injections for pain in June 2014, and afterwards reported some relief from pain to the right calf and left foot. AR 22, 244.

In January 2015, Plaintiff underwent a musculoskeletal evaluation, which was completed after the date last insured of March 31, 2014. At this examination, Plaintiff exhibited a slow gait, decreased range of motion in the cervical spine, and decreased range of motion in the lumbar spine. *Id.* at 22. Plaintiff was unable to heel-walk but had a normal range of motion in the lower extremities and strength. *Id.* During this time, there was no other treatment in the record.

Plaintiff is also obese, with a body mass index ranging from $33.46 - 34.61$ kg/m$^2$.

## I.  Personal History

Plaintiff was fifty-six years old when he appeared before the ALJ. AR 24. He has a high-school education. *Id.* From October 1997 to October 2000, Plaintiff delivered newspapers; he was a pizza cook and delivery driver from January 2001 to March 2002; was a driver removing dead animals from July 2002 to April 2005; he worked as a service technician for a trailer supply company from April 2005 to June 2008; and finally was a a laborer from June to July 2012. *Id.* at 156-166, 171. He stopped working on July 2, 2012 because of his medical condition. *Id.* at 151, 170.

## II.  Medical Evidence

### a.  Treating Physician Evidence

#### i.  Raymond Deters III, D.C.

On March 3, 2012, Plaintiff saw Dr. Raymond Deters, a chiropractor, regarding multiple chronic spinal and extremity conditions caused from injuries over the years. AR 287. Plaintiff complained of constant, severe head pain which occasionally progressed to migraines, bilateral severe shoulder pain and stiffness, tingling in the fingers on his right hand, constant, severe lower back pain that made sitting nearly impossible, and constant, severe pain in the lower thoracic spine. *Id.*

Dr. Deters noted that Plaintiff had previously undergone multiple surgeries, including fusion in the lumbar spine, right wrist surgery, nose surgery, had several

4

lipomas removed, and had cortisone injections for shoulder pain. *Id.* At that time, Plaintiff was taking Gabapentin, Baclofen, Nabunatone, Hydrocodone, and Somatryptan. *Id.* Plaintiff was unable to work or drive due to his severe pain and the medication he was required to take. *Id.* Dr. Deters diagnosed plaintiff with cervical and lumbar radiculopathy, multiple subluxations throughout the cervical, thoracis, lumbar and sacroiliac regions, spondylosis in multiple spinal levels, muscle spasms, and myalgia throughout the spinal muscles and rotator cuffs. *Id.* He recommended an aggressive course of chiropractic care to help restore more normal joint function in order to relieve the extreme irritation on his spinal nerves. *Id.* Dr. Deters also recommended rapid release treatments to break up the large amounts of fibrotic scar tissue that had built up in Plaintiff's soft tissues. *Id.*

### ii. William H. Buchner Jr., M.D.

On March 12, 2014, Plaintiff saw Dr. William H. Buchner Jr, a physician specializing in Family Medicine. ALR 220. Dr. Buchner's assessment indicated Plaintiff was suffering from obesity, chronic back pain, left foot pain, chest pain, and shortness of breath. *Id.* at 224. Plaintiff had a skin biopsy of a mole on his back. *Id.* Dr. Buchner prescribed Plaintiff Celebrex for pain and scheduled a follow-up one week later. *Id.* Plaintiff saw Dr. Buchner again on March 19, 2014. *Id.* at 226. Dr. Buchner noted that the Celebrex did not help with Plaintiff's pain. *Id.*

On January 16, 2015, Plaintiff saw Dr. Buchner for a follow-up visit to assess his progress. ALR 294. Plaintiff had been prescribed venlafaxine for depression and pain but had not started taking it. *Id.* Plaintiff was suffering from multiple musculoskeletal ailments ranging from right shoulder pain, numbness and tingling in his right hand and fingers, low back pain, radiating pain, leg pain, and heel pain. *Id.* Dr. Buchner's assessment indicated Plaintiff was suffering from chronic back pain, continuous opioid dependence, and major depression. *Id.* at 296.

### iii. Kathlyn R. Ignacio, M.D.

On April 21, 2014, Plaintiff saw Dr. Kathlyn R. Ignacio, a physician specializing in Occupational Medicine. ALR 272. Dr. Ignacio noted Plaintiff's lumbar vertebral fusion, chronic back pain, and opioid dependence. *Id.* at 276. She ordered an MRI and scheduled a follow-up appointment for May 14, 2014. *Id.* On May 14, 2014, Plaintiff saw Dr. Ignacio for his follow-up. ALR 231. He presented with low back pain and shooting pain and parasthesias in both feet and legs. Dr. Ignacio assessed that Plaintiff suffered from chronic back pain and left foot pain. *Id.* at 236-237. On May 23, 2014, Dr. Ignacio administered to plaintiff an epidural steroid injection. *Id.* at 243.

### iv. Dr. Kenneth Altschuler, M.D.

In May of 2016, Dr. Kenneth Altschuler, a physician specializing in Family Medicine, began treating Plaintiff. *Id.* at 316. Dr. Altschuler's Evaluation opines that Plaintiff cannot sustain long-standing periods of sitting for more than thirty minutes at a time due to lumbar radiculopathy and severe lower back pain. *Id.* In addition, Dr. Altschuler observed that Plaintiff required continuous analgesic medication, NSAIDs, muscle relaxants, and antidepressants. *Id.* As his treating physician, Plaintiff saw Dr. Altschuler on a monthly basis. *Id.*

## III. Disability Hearing
### a. Plaintiff's Testimony

Plaintiff testified that he was unable to work as of 2014. ALR 54. He stated that any bending or twisting causes a great deal of pain, and that he cannot drive because of the pain medications he is taking. *Id.* He also stated that sitting or standing up for prolonged periods "causes problems." *Id.*

Plaintiff states that, most of the time, he lays on the couch because of the pain. *Id.* at 55. Despite his physical limitations, Plaintiff tries to go for walks when he can. *Id.* He states he can walk about a half-mile with breaks. *Id.* He states that he used to be a very active person and he hates not being able to do anything. *Id.* He has no hobbies anymore and is unable to lift anything weighing more than a gallon of milk. *Id.*

### b. Vocational Expert Testimony

The ALJ took testimony from Alan Boroskin, a vocational expert ("VE"). AR 56. Mr. Boroskin testified that he had reviewed the file sufficiently to give an opinion on Plaintiff's vocational ability. *Id.* Mr. Boroskin asked Plaintiff what percent of the time during his employment at Pizza Hut was spent cooking, to which Plaintiff responded, "approximately half." *Id.* at 58.

The ALJ asked Mr. Boroskin to classify Plaintiff's work history. *Id.* Mr. Boroskin stated that Defendant previously worked as: (1) a service technician for a trailer supply company, which is a semi-skilled profession with a heavy exertion level, requiring a specific vocational preparation ("SVP") rating of four[3] (*Id.*); (2) a delivery driver, a semi-skilled profession with a medium exertion level, SVP 3[4] (*Id.*); (3) a pizza cook, a skilled profession with a medium exertion level, SVP 5[5] (*Id.*); and (4) a cabinet assembler, a semi-skilled profession with a light exertion level, SVP 3.

The ALJ then requested the VE to consider a hypothetical individual who is the same age with the same vocational and educational background as Plaintiff who is limited to light exertional work where standing and walking are limited to no more than 30 minutes at one time. *Id.* at 59. The hypothetical individual may occasionally climb ramps and stairs but never ladders, ropes or scaffolds. *Id.* He may occasionally balance, stoop, bend at the waist, kneel, crouch, and crawl. *Id.* The ALJ then asked the VE if this hypothetical individual could perform any of the past work of Plaintiff and if other work would be available. *Id.* The VE asked the ALJ if there was a sitting restriction, and the ALJ said there was not. *Id.* The VE responded that the hypothetical individual could not

---

[3] Jobs with an SVP rating of four require over three months of training up to and including six months. Social Security Administration, Program Operations Manual, Section DI 25001.001: Quick Reference Guide, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79.

[4] Jobs with an SVP rating of three require up to three months of training. Social Security Administration, Program Operations Manual, Section DI 25001.001: Quick Reference Guide, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79.

[5] Jobs with an SVP rating of five require over six months of training up to and including one year. Social Security Administration, Program Operations Manual, Section DI 25001.001: Quick Reference Guide, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79.

perform any of Plaintiff's past work and that any available work would fall into the sedentary category. *Id.*

The ALJ then asked if there would be any light work available. *Id.* The VE replied that no light work would be available due to the standing and walking restriction. *Id.* The ALJ then clarified that the standing restriction was to 30 minutes at a time, and also added that the hypothetical individual could walk at a light level. The ALJ posed if these clarifications would change the VE's answer. *Id.* at 60. In response, the VE testified that a number of jobs could then accommodate the standing and walking restriction because these jobs can be performed effectively while alternating between sitting and standing. *Id.* As examples, he identified jobs in the "highly restricted" range, such as the "Cashier II position," which included cashiers in parking garages and mini-marts.[6] *Id.* The VE gave Ticket Seller and Information Clerk as additional examples of "highly restricted" jobs that could accommodate a 30-minute standing restriction, light walking, and would require only light exertion. *Id.*

### IV. The ALJ's Findings

ALJ Lunderman rendered her decision on April 21, 2017, and found the claimant was "not disabled under sections 216(i) and 223(d) of the Social Security Act." AR 25. ALJ Lunderman performed a five-step sequential evaluation to determine whether Plaintiff was disabled. *Id.* at 18. She began the analysis by finding that Plaintiff met the insured status requirement for disability benefits on March 31, 2014. *Id.* at 20.

At step one, ALJ Lunderman found that Plaintiff had not engaged in substantial gainful activity since February 28, 2014 through the date last insured of March 31, 2014. *Id.*

---

[6] The Cashier II positions constitute a highly restricted range of the cashier position. Dkt. No. 11-2 at 61. These positions require only light exertion – only up to 16 percent of the full range of exertion. *Id.* According to the vocational expert, these cashiers are "typically found in parking garages, minimarts, and the like." *Id.* A Cashier II position was classified as a job with an SVP rating of two. Training for these jobs include anything beyond a short demonstration up to and including one month of training.

At step two, the ALJ determined that Plaintiff was severely impaired by lumbar degenerative disease that more than minimally affected the Plaintiff's ability to perform basic work. *Id.*

At step three, ALJ Lunderman concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) except standing and/or walking was limited to 30 minutes continuously and to six hours total during an eight hour workday." *Id.* at 21. In addition, the ALJ noted restrictions that precluded the climbing of ladders, ropes, and scaffolds. *Id.* Plaintiff could also only climb ramps and stairs, balance, stoop, kneel, crouch, and crawl only occasionally in a work context. *Id.* In coming to this conclusion, the ALJ considered the Plaintiff's own testimony, all of the medical testimony and evidence, and the vocational expert's testimony. *Id.* Moreover, the ALJ assigned little weight to treating physician Dr. Altschuler's opinion, little weight to Dr. Deter's opinion, little weight to Dr. Buckner's opinion, and great weight to the opinions of the state agency medical consultants. *Id.* at 22-24.

At step four, the ALJ found that Plaintiff would be unable to complete his past relevant work as the "demands of said past work would exceed the residual functional capacity." *Id.* at 23.

At step five, the ALJ, in considering the Plaintiff's age, high school education, and work experience, concluded that Plaintiff's RFC would enable him to make a successful adjustment to jobs that existed in significant numbers in the national economy. *Id.* at 24. Specifically, the ALJ relied on the vocational expert's testimony that given Plaintiff's age, education, work experience, and RFC, he would be able to perform the requirements of representative occupations such as cashier II, ticket seller, and information clerk. *Id.* at 24.

Therefore, the ALJ concluded that Plaintiff was not disabled at any time from February 28, 2014, the alleged onset date, through March 31, 2014, the date last insured. *Id.* at 25.

# LEGAL STANDARD

## I. Standard of Review of Magistrate Judge's Report and Recommendation

In reviewing a Magistrate Judge's Report and Recommendation,"[a] judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72; Advisory Committee's Notes. When no objections are filed, a district court may assume the correctness of the magistrate judge's findings and recommendations, and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

## II. Standard of Review for Commissioner's Final Agency Decision

Section 205(g) of the Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. § 405(g). The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and may also remand the matter to the Social Security Administrator for further proceedings. *Id.*

The scope of the reviewing court is limited; it may only "set aside the ALJ's denial of benefits . . . when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotations omitted). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. SSA*, 466 F.3d 880, 882

(9th Cir. 2006). However, "[e]ven when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

### III. Determination of Disability

In order to qualify for disability benefits under the Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death, or which lasted, or can be expected to last, for a continuous period of twelve months or more; and (2) the impairments renders the applicant incapable of performing the type of work that the applicant previously performed, and incapable of performing any other substantially gainful employment within the national economy. 42 U.S.C. § 423(d)(1). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* 423(d)(3).

The ALJ employs a sequential, five-step process to determine whether an applicant is disabled under the Act. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). They are set out as follows:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled . . .

11

(iv) At the fourth step, we consider our assessment of your residual function capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled . . . .

20 C.F.R. § 404.1520(a)(4)

If the ALJ finds that an applicant is not disabled at any step, he may make his determination as to that condition and need not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009). At steps four and five, The ALJ determines a claimant's residual functional capacity ("RFC"), which is the most a claimant can still do considering "all relevant medical and physical evidence in [the] case record" and any "limiting effects caused by medically determinable impairments." *Garrison*, 759 F.3d at 1011 (9th Cir. 2014). Additionally, the ALJ may "'call upon a [VE] to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy.'" *Id.* (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

## **DISCUSSION**

Plaintiff's motion for summary judgment argues that the ALJ erred at step five by "giving little to no weight to any of the doctor's[7] opinions provided in this case." Dkt.

---

[7] Referring to the opinion of Plaintiff's "treating physician," Dr. Altschuler. Although Schuh also identifies chiropractor Raymond Deters III, D.C., as a "treating physician" (ECF No. 13-1, at 6), Dr. Altschuler is the only medical professional to opine on Schuh's limitations who qualifies as a treating doctor or "acceptable medical source." *See* 20 C.F.R. § 404.1502(a) (defining an "[a]cceptable medical source" to include medical doctors, but not chiropractors).

12

No. 13-1 at 5. Specifically, Plaintiff notes that the ALJ did not provide an adequate basis for giving controlling weight to the state reviewer's opinion over that of Plaintiff's treating physician, Dr. Altschuler. Dkt. No. 22 at 3. Since the ALJ is required to consider all of the necessary factors for determining the weight given to a medical opinion under 20 C.F.R. § 404.1527(c), Plaintiff contends that failure to do so is grounds for remand. *Id.* Finally, Plaintiff also asserts that the ALJ did not properly question the vocational expert with respect to Plaintiff's limitations as prescribed by his treating physicians.

Defendant's cross-motion countered by arguing the ALJ did not err, as: (1) she properly considered the opinion of Dr. Altschuler and gave germane reasons for according it little weight (Dkt. No. 18-1 at 10); (2) the ALJ properly considered and gave great weight to the opinions of non-treating physicians and state agency medical consultants (*Id.* at 11-12); and (3) the ALJ properly found that Plaintiff failed to meet his burden of proof that he could not perform light work with the thirty-minute limitation to standing or walking. *Id.* at 17.

The Magistrate Judge found that the ALJ erred in failing to undertake a sufficient regulatory-factor analysis when rejecting Dr. Altschuler's opinion, and that the error was not harmless. Dkt. No. 26 at 4-5. This Court agrees for the reasons set forth below.

**I.   The ALJ Improperly Discounted the Opinion of Plaintiff's Treating Physician**

  **a.  Treating Physician Rule**

In social security disability cases, the ALJ must consider all medical opinion evidence. *See* C.F.R. § 404.1527(b), (c). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Russell v. Berryhill*, 2017 WL 4472630 at *4 (N.D. Cal. Oct. 6, 2017).

A treating physician's opinion is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

13

18-cv-1398-GPC-AGS

not inconsistent with the other substantial evidence in the claimant's case record." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (alterations omitted). If the ALJ gives a treating physician's opinion less than controlling weight, the ALJ must comply with two requirements. First, the ALJ must consider all of the following factors in deciding the weight to give any medical opinion: (1) length and frequency of the examining relationship; (2) nature and extent of the treatment relationship; (3) supportability and whether the medical opinion includes supporting explanations and relevant evidence such as laboratory findings; (4) consistency with the record as a whole; (5) physician specialization and; (6) other factors. *Id.* The failure to consider these factors constitutes reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Next, the ALJ must provide reasons for rejecting the treating physician's opinion. *Id.* at 675.

When a treating doctor's opinion is not controlling, the ALJ must determine the appropriate weight to give it after at least some consideration of all the following factors listed above. *See* 20 C.F.R § 404.1527(c)(2)-(6). And when a treating doctor's opinion is contradicted by another doctor, as here, the ALJ may only discount the treating physician's opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675.

Although ALJs need not engage in a full-blown written analysis of all of these regulatory factors, they must show "some indication" that they considered each one. *Hoffman v. Berryhill*, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), *adopted*, 2017 WL 4844545 (Sept. 14, 2017).

### i. Magistrate Judge's Findings

The Magistrate Judge found that the ALJ offered a specific and legitimate reason – that physician-patient relationship did not begin until two years after the Plaintiff's date last insured – for rejecting the treating physician's opinion. However, the Magistrate Judge also observed that the ALJ failed to undertake a sufficient regulatory-factor analysis. Specifically, the R&R finds that the ALJ's six-sentence treatment of Dr.

Altschuler's medical assessment fails to consider the consistency of Dr. Altschuler's opinion with the record as a whole. *See* AR 23. In addition, the ALJ neither mentions Dr. Altschuler's specialty ("Family Medicine") nor whether Dr. Altschuler's opinion was sufficiently related to his specialty. AR 23, 315. The Magistrate Judge found that the failure to consider these regulatory factors "alone constitutes reversible error." Dkt. No 26 at p. 3; *Quoting Trevizo v. Berryhill*, 871 F.3d at 676.

### ii. Analysis and Review

Since the ALJ decided not to afford Dr. Altschuler's opinion controlling weight, she was required to analyze the factors under section 404.1527(c)(2). The ALJ cursorily addressed some of these factors and noted that Dr. Altschuler did not begin treating the patient until two years after his date last insured. However, the ALJ failed to properly consider Dr. Altschuler's medical assessment through the lens of all required factors, such as the nature and extent of the treatment relationship, the consistency of Dr. Altschuler's opinion, and Dr. Altschuler's specialty. Specifically, the ALJ does not mention the physician's specialization or examine the consistency of Dr. Altschler's opinion with the record as a whole. Moreover, the ALJ does not explain how Dr. Altschuler's assessment was unsupported by other medical testimony.

"The failure to consider these regulatory factors "'alone constitutes reversible legal error.'" See *Trevizo v. Berryhill*, 871 F.3d at 676. The fact that Dr. Altschuler did not begin treating the Plaintiff until two years after the date last insured does not obviate the need for the ALJ to assess the other relevant factors. *See Russell v. Berryhill*, 2017 WL 4472630 (N.D. Cal. Oct. 6, 2017) (where the court found that the ALJ was still required to address factors for a treating physician who did not begin seeing the claimant until several years after her date last insured). Moreover, medical evaluations made after the expiration of a claimant's insured status should not be disregarded solely on the basis that they are rendered retrospectively. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). And even if the ALJ believed that Dr. Altschuler's conclusions were insufficient evidence to form an opinion regarding the Plaintiff's functional capacity on or before his

15

date last insured, that still does not mean that Dr. Altschuler's opinion was inconsistent with the evidence or contradicted by other medical opinions on the record.

In *Russell*, the court found that the retrospective nature of the treating physician's opinion alone was not enough to provide a proper basis for discounting that opinion. *See Russell v. Berryhill*, 2017 WL 4472630 (N.D. Cal. Oct. 6, 2017). Although the treating physician did not begin seeing the Plaintiff until several years after her date last insured, the court noted that Plaintiff's reports of pain and fibromyalgia were consistent with pain reported during the adjudicative period. The court found, "where [ . . . ] the retrospective opinion of the treating physician is uncontradicted, a higher standard applies: the ALJ may disregard that opinion only if he provides clear and convincing reasons that are supported as a whole." *Id.* at *4. As such, the fact that the doctor did not begin treating claimant until after her date last insured "does not, by itself, provide a legitimate basis for discounting [the doctor's] uncontradicted opinion." *Id.*

Here, the Court concludes that the ALJ similarly committed a reversible error by failing to address all of the regulatory factors required in discounting a treating physician's opinion. In addition, the Court finds that the retrospective nature of the treating physician's relationship with the Plaintiff – without additional and substantial evidence of contradiction in the record – is not enough for the ALJ to disregard the treating physician's opinion.

Since the retrospective nature of Dr. Altschuler's opinion is the only reason the ALJ gives for discounting his opinion, the Court finds that the ALJ committed a reversible error, which the Court finds constitutes grounds for remand.

### b. The ALJ's Error Was Not Harmless

#### i. Magistrate Judge's Findings

Next, the Magistrate Judge found that the ALJ's failure to undertake the required regulatory-factor analysis when discounting Dr. Altschuler's opinion constituted more than harmless error. Specifically, the Magistrate Judge noted that during oral argument, the Social Security Administration could not articulate any compelling reasons that the

16

error was harmless – even when given an additional minute of argument for that purpose. Dkt. No. 26 at 4. The Magistrate Judge also found that the ALJ's failure to incorporate a sitting restriction into her line of questioning of the vocational expert was not an inconsequential error when considering the record as a whole. *Id.*

### ii. Analysis and Review

"[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), 4 18-cv-1398-GPC-AGS (internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

This Court likewise cannot find that the procedural error here was inconsequential. It is clear from the record that Dr. Altschuler recommended a strict restriction on Schuh's sitting. This sitting restriction had more than a modicum of support in the record from testing, medical observations, medical opinions from the adjudicative time period, and Schuh's own testimony. *See, e.g.*, AR 54, 56, 278, 287, 301, 310. Because the ALJ gave little weight to Dr. Altschuler's opinion, the ALJ did not incorporate such a limitation into her questioning of the vocational expert or her residual functional capacity analysis. As a result, the vocational expert did not consider the need for such a restriction in testifying about alternative vocations. AR 21, 59. And finally, it is notable that in the moving papers and during ten minutes of oral argument before the Magistrate Judge, the Social Security Administration articulated no grounds for harmless error. Even after the SSA received an additional minute of oral argument specifically for that purpose, the Magistrate Judge found that it was still unable to do so.

A sitting restriction may well have rendered Schuh unable to find work – including in one of the suggested alternative occupations (i.e. ticket seller, cashier, information clerk) – and consequently eligible for disability benefits. *See* SSR 83-10, 1983 WL 31251, at *5 (1983) (even a "sedentary" worker generally must sit for "approximately 6 hours of an 8-hour workday"); 20 C.F.R. Pt. 404, Subpt. P, App. 2, at 201.12 (a

17

"Sedentary" claimant with Schuh's age and education is presumptively "Disabled"). At a minimum, this Court finds that the ALJ should consider the need for such a restriction in accordance with the mandatory regulatory factors.

In addition, the Court's decision to remand this case for further proceedings is bolstered by other factual errors sprinkled in the ALJ's report. For example, the ALJ repeatedly misidentifies physical therapist Tony Sanchez and physical therapist assistant Celia Bartman as "William Buc[h]ner, M.D.," the referring physician. *Compare* AR 23 *with* AR 300, 311. Similarly, the ALJ claims that the opinions of "other providers" are "not consistent with the opinions expressed" by the treating physicians (AR 22-23), but the record is devoid of such contrary opinions from other providers. And finally, the Court notes that it is perplexing that the ALJ's discounted Dr. Buchner's opinion in part because "Dr. Buchner saw the claimant only once" when the record demonstrates that Plaintiff visited Dr. Buchner at least twice during the operative time period prior to the date last insured and was subsequently sent for follow-up at a spine clinic. *See* AR 220, 226.

In deciding whether to remand for either further proceedings or an award of benefits, the Court is guided by the three-step "credit-as-true" rule. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014). The Court must first ask whether the ALJ failed to offer "legally sufficient reasons for rejecting evidence." *Id.* at 1100. If she failed to do so, the Court would next determine whether there are outstanding issues that must be resolved before a determinability of disability can be made and if further administrative proceedings would be useful. *Id.* at 1101. And lastly, the Court must analyze if the relevant testimony is credible as a matter of law – and award benefits, so long as the record of the whole "leaves not the slightest uncertainty as to the outcome of the proceeding." *Id.*

Here, the Court agrees with the Magistrate Judge's Recommendation that further administrative proceedings would be useful. Although the ALJ made reversible errors,

the Court also finds that there are unresolved conflicts and ambiguities in Dr. Altschuler's testimony. Since Dr. Altschuler's opinion is "not a model of clarity either," the Court cannot find that the record leaves not the slightest uncertainty as to the outcome. ECF No. 26 at 5; *see* AR 315. The Court finds that the ALJ is in the best position to undertake the weight that must be accorded to Dr. Altschuler's opinion. This is a potentially outcome determinative analysis would be best conducted through further administrative proceedings.

## CONCLUSION

Based on the above, the Court ADOPTS the Report and Recommendation of the Magistrate Judge and **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's cross-motion for summary judgment. The case shall be remanded to the Social Security Administrator for further proceedings.

**IT IS SO ORDERED.**

Dated: September 26, 2019

Hon. Gonzalo P. Curiel
United States District Judge